The FIRST BANK OF GRANTSBURG,
Appellant,

v.

The HARRIS BANKING COMPANY OF
HARRIS, MISSOURI, now Citizens
Bank of Newton, Appellee.

No. 81–1545.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 13, 1981.

Decided Dec. 11, 1981.

Rehearing Denied Jan. 27, 1982.

Duane J. Fox (argued), Burrell, Seigfreid & Bingham, P.C., Kansas City, Mo., for defendant-appellee Harris Banking Company of Harris, Missouri, Now Citizens Bank of Newtown.

Francis L. Kenney, III (argued), St. Louis, Mo., and Robert A. Brown, Jr., St. Joseph, Mo., Cook, Murphy & Kenney, St. Louis, for appellant-plaintiff, First Bank of Grantsburg.

Before HEANEY and McMILLIAN, Circuit Judges, and REGAN,* Senior District Judge.

HEANEY, Circuit Judge.

The Grantsburg Bank obtained a money judgment against the Harris Bank in 1975. At that time, the banks entered into a written agreement not to execute upon the judgment. In 1980, however, Grantsburg commenced execution on its judgment, contending that Harris Bank had breached the agreement. The district court permanently stayed such execution. We reverse.

Grantsburg Bank brought a federal court action in 1972 against Harris Bank, arising out of a conversion of monies that was alleged to have occurred in 1969.[1] In 1970, however, the ownership of Harris Bank had changed hands. The sellers did not disclose to the buyer, Rudy Johnson,[2] that Grantsburg might have a claim against Harris Bank. Under the agreement to purchase Harris Bank, however, the sellers indemni-

---

* The Honorable JOHN K. REGAN, United States Senior District Judge, Eastern District of Missouri, sitting by designation.

1. The conversion claim involved a setoff in November of 1969 by Harris Bank against monies in a depositor's account. Both the judgment on this claim and subsequent execution proceed-

ings took place in the Western District of Missouri.

2. Sale of the Harris Bank was part of a larger transaction in which five banks were sold to bank holding companies owed by Johnson. The Harris Bank was sold to Thirty-Five Ven-

fied Johnson against any "loss" sustained by virtue of undisclosed claims.

The indemnity agreement between the sellers and Johnson became the basis for apparent settlement of Grantsburg's claim in 1975, as follows. Grantsburg would document its claim and obtain judgment against Harris Bank in the federal court action. Under a written "Covenant Not to Execute," Johnson would seek recovery of this judgment amount in a separate state court action for indemnity from the sellers.[3] Grantsburg in turn would not execute upon its judgment except out of the proceeds from that state court action.[4]

The conduct of the state court indemnity action was an essential element of the Covenant Not to Execute. Under the Covenant, Johnson was obligated "to diligently prosecute" the indemnity action against the original sellers and to assist Grantsburg in collection of proceeds from any judgment won in that action.[5] Johnson was further obligated not to settle the indemnity action without Grantsburg's consent. In exchange for these commitments, Grantsburg agreed to limit execution of its federal judgment to the proceeds recovered from Johnson's indemnity claim.

Johnson's indemnity action was actually a counterclaim in litigation commenced by the sellers of Harris Bank. Johnson had initially refused to pay the purchase price for the Bank, for reasons unrelated to Grantsburg's claim. Johnson reached a settlement agreement with the sellers but then refused to perform that agreement. When the sellers sought specific performance of their settlement agreement, Johnson counterclaimed on several grounds—eventually including an indemnity counterclaim to recover the amount of Grantsburg's federal court judgment. *See Dickey v. Johnson*, 532 S.W.2d 487 (Mo.App.1975).

The state trial court denied recovery for the portion of Johnson's indemnity counterclaim that was based on Grantsburg's federal judgment, but allowed recovery of attorneys' fees Johnson incurred in defending Grantsburg's federal action. The state court reasoned that the indemnity agreement between Johnson and the original sellers only applied to "actual losses" incurred by Johnson. Because Johnson had not paid Grantsburg the amount of its judgment— and because the Covenant Not to Execute limits Grantsburg to execution out of the proceeds of the state action—the trial court ruled that Grantsburg's judgment was not an actual loss to Johnson and, therefore, was not recoverable under the indemnity agreement. Because Johnson did pay attorneys' fees in connection with the Grantsburg judgment, however, such fees were held recoverable under the indemnity agreement.

Johnson initially noticed an appeal from numerous rulings made in the state court action, including denial of indemnity for Grantsburg's judgment. Johnson and his counsel concluded, however, that appeal of the Grantsburg judgment issue would be "frivolous and meritless" because Missouri

turers, Inc., a corporation wholly owned by Johnson. The bank subsequently has been sold twice, through sale of the stock in Thirty-Five Venturers, Inc.

3. The "Covenant Not to Execute" was an agreement between Grantsburg Bank on one side and Harris Bank, Thirty-Five Venturers, Inc., and Johnson on the other. To avoid confusion, only Johnson is referred to as the party seeking indemnity from the original sellers of Harris Bank.

4. Under the Covenant, if recovery in the state court action was insufficient to satisfy the federal judgment, Grantsburg could bring a new action against Harris Bank and the latter would waive any statute of limitations defense.

5. Harris Bank and Thirty-Five Venturers, Inc., were the parties formally obligated to prosecute the indemnity claim. Johnson, however, was the real party in interest in that action. The proceedings were further complicated by Johnson's sale of the stock in Thirty-Five Venturers, Inc., in 1973—after Grantsburg had filed its federal court action but before the settlement and Covenant Not to Execute were reached in 1975. On the available record, it appears that Johnson indemnified the 1973 buyer against possible liability from Grantsburg's claim. Thus, Johnson appears to remain the real party in interest. To avoid confusion, only Johnson is referred to here as the obligor under the Covenant Not to Execute.

precedents supported the trial court's action. Although Johnson pursued many other claims on appeal, the claim relating to Grantsburg's judgment was abandoned and was never passed upon by the state appellate court. *See Thirty-Three Venturers, Inc. v. Dickey*, 570 S.W.2d 312 (Mo.App. 1978). Grantsburg was not notified of the abandonment. Moreover, letters to Grantsburg from counsel handling the appeal appear to have deliberately misled Grantsburg into believing that appeal of its judgment claim was being pursued when in fact it had been abandoned.

Grantsburg finally became aware that the state court appeal was decided without consideration of its claim. In February of 1980, Grantsburg commenced execution upon its judgment against Harris Bank. Based on the Covenant Not to Execute, Harris Bank obtained a permanent stay of such execution.

The parties concede that an agreement not to execute judgment is generally enforceable according to its terms. They also do not dispute that a stay of execution would be appropriate here if the Covenant Not to Execute has been performed. *See State ex rel. Laughlin v. Duncan*, 16 Mo. App. 548 (Memorandum, 1885); Fed.R. Civ.P. 62(f); *Restatement of the Law of Judgments*, Ch. 5, § 113. The only question thus is whether Harris Bank, Thirty-Five Venturers, Inc., and Johnson have performed their obligation under that Covenant to diligently prosecute the indemnity claim in state court.

In our view, the Covenant Not to Execute has been breached and, therefore, cannot be relied upon to stay execution of Grantsburg's judgment. Diligent prosecution of a claim may not always require appeal from an unfavorable determination of the claim. Here, however, Johnson pursued appeal of other aspects of its indemnity claim. There would have been little additional burden from appealing the issue of Grantsburg's judgment. Moreover, the Covenant expressly contemplated that appeals in the state court might be taken in pursuit of the indemnity claim. Even if appeal of the indemnity claim stood little chance of success,[6] the abandonment of appeal was nonetheless conducted in a manner that breaches the Covenant Not to Execute. Grantsburg was not notified of the abandonment when the decision was made. More egregious yet is the correspondence with Grantsburg which misrepresented that appeal of the Grantsburg judgment issue was being pursued. Had Grantsburg known that the appeal would be abandoned, it might have intervened to pursue it. Alternatively, Grantsburg might have commenced a new action against Harris Bank immediately after the unfavorable state trial court ruling was entered in 1976. Instead, Grantsburg was left believing as it had from the outset—that the indemnity claim was asserted in good faith and was a reasonable basis for settling its action against Harris Bank.

A permanent stay against execution of Grantsburg's judgment effectively vacates that judgment and forces Grantsburg, more than eleven years after its cause of action arose, to locate the original sellers of Harris Bank and re-establish their liability. The only basis for reaching this result would be to enforce an agreement in favor of a party that has materially breached that agreement. We decline to do so.

We remand to the district court with directions to vacate its stay. In doing so, we reach only the question of Grantsburg's right to execute upon its judgment. Whether liability ultimately rests with the original sellers of Harris Bank or with others is not before us.

---

**6.** Harris Bank contends that appeal of the indemnity claim would have been utterly frivolous—that the state court was unarguably correct in ruling that Johnson had no right to indemnity for the amount of Grantsburg's judgment. If this point of law is as unassailable as Harris now asserts, then inducing Grantsburg to rely on the indemnity claim may have been in bad faith from the outset.