Daniel J. CALLAHAN, Jr.,
Plaintiff–Respondent,

v.

CARDINAL GLENNON CHILDREN'S
HOSPITAL, Defendant,

and

St. Louis University, Defendant–
Appellant.

No. 65260.

Missouri Court of Appeals,
Eastern District,
Division Four.

May 23, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 26, 1995.

Application to Transfer Denied
July 25, 1995.

William L. Davis, Robyn Susan Fox, Moser and Marsalek, P.C., St. Louis, for appellant.

William T. Nolan, Devereaux, Stokes & Nolan, P.C., Godfrey P. Padberg, Padberg, McSweeney, Slater & Merz, St. Louis, for respondent.

SIMON, Judge.

Defendant St. Louis University (SLU) appeals from the trial court's denial of its motion for an order showing satisfaction of judgment. On appeal, SLU alleges that (1) the trial court erred in denying its motion and in requiring SLU to pay an additional amount because its original payment to plaintiff Daniel J. Callahan, Jr. and plaintiff's settlement with defendant Cardinal Glennon Children's Hospital (Cardinal Glennon) fully satisfied the judgment in plaintiff's favor; and (2) its appeal was timely, therefore, it did not waive its right to seek an order showing full satisfaction of plaintiff's judgment. We affirm.

The substantive facts underlying this appeal appear in detail in *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 856–58 (Mo. banc 1993) (*Callahan I*). In brief, after a jury trial, plaintiff secured a $16,000,000.00 judgment, reduced to $15,710,000.00 as a result of a pretrial settlement between plaintiff and a treating doctor, against defendants, who were found jointly and severally liable for injuries plaintiff suffered due to defendants' negligence. The present appeal stems from a postjudgment settlement between plaintiff and Cardinal Glennon, *see id.* at 858, whereby Cardinal Glennon paid plaintiff $4,000,000.00 in exchange for a complete release of further liability and partial satisfaction of judgment.

Plaintiff and Cardinal Glennon entered into the settlement while the *Callahan I* appeal was pending. Pursuant to a remand, the Circuit Court of the City of St. Louis conducted a hearing on the settlement on March 26, 1992. SLU sought to participate in the hearing, contending that it had an interest in the settlement and that it should receive copies of the settlement documents. Plaintiff objected to SLU's request, and the trial court sustained the objection. Subsequently, SLU moved to amend the judgment or alternatively for partial satisfaction of judgment ("first motion"), and the trial court denied the motion ("1992 order").

The trial court approved the settlement, and Cardinal Glennon dismissed its appeal. SLU proceeded with its appeal and, on October 26, 1993, our Supreme Court affirmed the trial court's judgment. *Callahan I*, 863 S.W.2d at 873.

On November 17, 1993, SLU tendered and plaintiff accepted payment of $9,644,648.77, which constituted one-half of the $15,710,000.00 judgment plus interest. SLU moved for an order showing satisfaction of judgment on November 24, 1993, based on its payment to plaintiff and on the settlement between plaintiff and Cardinal Glennon ("second motion"). However, before the second motion was heard, plaintiff filed requests for execution and garnishment against SLU bank accounts, seeking the balance of the $16,000,000.00 total judgment.

SLU's motion was heard on December 2, 1993, before a different trial court, which refused to approve a supersedeas bond to stay execution. On December 15, 1993, the trial court denied SLU's second motion ("1993 order"), and SLU appealed.

Plaintiff has moved to dismiss SLU's appeal, on the ground that it failed to appeal from the 1992 order, "which raised the identical issues of law." We have taken plaintiff's motion with the case, and SLU directs its second point to plaintiff's motion to dismiss. Therefore, for the sake of logical presentation, we shall address its second point.

In its second point, SLU alleges that it did not waive its right to seek an order showing full satisfaction of judgment by failing to appeal from the 1992 order, and that, therefore, it timely filed its appeal from the 1993 order. SLU offers four reasons in support: (1) any appeal earlier than the present one would have been premature; (2) the trial court's ruling that it lacked jurisdiction "does not prevent this appeal on the merits"; (3) the issues in the 1993 motion are different from those in the 1992 motion; and (4) plaintiff is estopped from arguing that the trial court had jurisdiction in 1992 because he argued at the hearing that the trial court lacked jurisdiction. Again, for the sake of logical presentation, we begin by addressing the second and third reasons.

■ The threshold issue is whether the 1992 order denying SLU's first motion for partial satisfaction of judgment was appealable.

SLU relies on *Boillot v. Conyer*, 861 S.W.2d 152 (Mo.App.E.D.1993), for the proposition that "[a] determination by a court as to whether or not it has jurisdiction of a matter or issue is not an appealable order, and instead is properly reviewable by an extraordinary writ." However, a careful reading of *Boillot* reveals that it reaches a different conclusion: "A determination that a court has jurisdiction is not an appealable order and instead is properly reviewable by an extraordinary writ." *Id.* at 154[2]. Clearly, a determination "whether or not" a court has jurisdiction over a matter is different from a determination that it "has" such jurisdiction. The trial court here, however, concluded that it did *not* have jurisdiction and, therefore, *Boillot* is not applicable.

Section 512.020, R.S.Mo.1986, makes appealable "any special order after final judgment in the cause." This phrase encompasses "orders in special proceedings attacking or aiding the enforcement of the judgment after it has become final in the action in which it was rendered." *Helton Constr. Co. v. High Point Shopping Ctr., Inc.*, 838 S.W.2d 87, 91[1] (Mo.App.S.D.1992) (quoting *Wehrs v. Sullivan*, 187 S.W. 825, 826–27[2] (Mo.1916)). *Helton*, 838 S.W.2d at 91, cites several examples of "any special order after final judg-

ment," including an order reviving a judgment and lien after the judgment creditor obtained a writ of scire facias in accordance with prior Rule 74.36, *Moore v. Luna*, 626 S.W.2d 417, 418[1] (Mo.App.1981); a final judgment entered in a garnishment action, *Household Fin. Corp. v. Seigel–Robert Plating Co.*, 483 S.W.2d 415, 417[5] (Mo.App. 1972); and an order overruling a motion to quash an execution, *Carrow v. Carrow*, 294 S.W.2d 595, 597[2] (Mo.App.1956). Missouri courts have a long history of permitting appeals from the overruling of motions to quash executions. *See, e.g., Slagel v. Murdock*, 65 Mo. 522, 524[1] (1877); *Gale v. Michie*, 47 Mo. 326, 327[1] (1871); *Bain v. Chrisman*, 27 Mo. 293 (1858). More recently, Missouri courts have treated orders overruling motions for partial or complete satisfaction of a judgment as appealable special orders under § 512.020. *See, e.g., Helton*, 838 S.W.2d at 92[1]; *White River Dev. Co. v. Meco Sys., Inc.*, 837 S.W.2d 327, 331–32[3] (Mo.App.S.D. 1992); *Brosnahan v. Brosnahan*, 516 S.W.2d 812, 814–15 (Mo.App.1974).

At the time of SLU's 1992 motion, the principal claim, plaintiff's action against SLU and Cardinal Glennon, had been already disposed of, and the overruling of SLU's motion for partial satisfaction of judgment was a final and complete disposition of its subject-matter. *See Gale*, 47 Mo. at 327[1]. Thus, we conclude that the denial of SLU's first motion was appealable.

■ However, we further conclude that SLU's failure to appeal from the 1992 order does not affect the appealability of the 1993 order. SLU contends that the issues in its second motion were not the same as those in its first motion and, therefore, the appeal should proceed to the merits. SLU's argument is based on the premise that it sought a partial satisfaction of judgment in 1992, whereas its 1993 motion was for complete satisfaction of the judgment. Plaintiff counters that SLU cannot relitigate the issue of whether Cardinal Glennon's $4,000,000.00 payment satisfied its equitable one-half share of the judgment, $7,855,000.00, because it was adjudicated by the denial of SLU's first motion, and the second motion necessarily

depends upon the presumption that Cardinal Glennon's share was satisfied.

Traditionally, collateral estoppel (issue preclusion) precluded the same parties from relitigating issues that had been adjudicated previously. *Oates v. Safeco Ins. Co.*, 583 S.W.2d 713, 719[8] (Mo. banc 1979). Although the concept of collateral estoppel has been extended to allow strangers to the prior suit to estop parties in the prior suit from relitigating previously adjudicated issues, *see id.* at 719[9], the traditional view, affecting the same parties as in the prior suit, remains effective. *See id.* at 719[10].

Examining the present situation in light of the *Oates* factors, we conclude that collateral estoppel does not preclude SLU from litigating the issue of whether it was entitled to an order of satisfaction of judgment.

■ The issues are concededly similar. SLU could not obtain complete satisfaction of the judgment in 1993 unless the court ruled that Cardinal Glennon had satisfied its share of the judgment, which the first trial court adjudicated in its 1992 order. However, as to the second *Oates* factor, the prior adjudication here was not on the merits. The trial court expressly denied SLU's first motion on the ground that it lacked subject-matter jurisdiction. A finding that a court lacks subject-matter jurisdiction is preliminary, without prejudice, and without res judicata or collateral estoppel effect. *See Zahn v. Associated Dry Goods Corp.*, 655 S.W.2d 769, 773[18] (Mo.App.1983). Therefore, the 1992 order did not affect the validity or appealability of the 1993 order. Plaintiff's motion to dismiss is denied.

■ We turn now to SLU's first point, which addresses the merits of the appeal. SLU argues that the trial court erred in denying its motion for an order showing satisfaction of judgment and in requiring SLU to pay an additional $5,080,082.65 because its original payment of $9,644,648.77 to plaintiff and plaintiff's settlement with Cardinal Glennon fully satisfied plaintiff's judgment.

Resolution of this issue turns on whether § 537.060, R.S.Mo.1986 (all further references to this section shall be to R.S.Mo.1986), applies to the settlement agreement between plaintiff and Cardinal Glennon. Section 537.060 states in relevant part:

**Contribution between tort-feasors— release of one or more, effect.**—Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor.

■ Our primary role in construing this statute is to ascertain the intent of the legislature from the language used and, if possible, give effect to that intent. *Magee v. Blue Ridge Professional Bldg. Co.*, 821 S.W.2d 839, 843[5] (Mo. banc 1991). In an endeavor to determine the legislative intent, it is appropriate to consider its history, the presumption that the legislature had knowledge of the law, the surrounding circumstances, and the purpose and object to be accomplished. *Person v. Scullin Steel Co.*, 523 S.W.2d 801, 803[1] (Mo. banc 1975).

The first sentence of § 537.060 ("first portion") initially was approved by our legislature on December 12, 1855. Ch. 51, § 8, R.S.Mo. 1855. Except for the removal of a comma, which does not affect its meaning, the 1855 version remains unchanged in the modern § 537.060. The 1855 version first was amended in 1915, when the legislature added the following ("the 1915 amendment"):

It shall be lawful for all persons having a claim or cause of action against two or more joint tort-feasors or wrongdoers to

compound, settle with, and discharge any and every one or more of said joint tort-feasors or wrongdoers for such sum as such person or persons may see fit, and to release him or them from all further liability to such person or persons for such tort or wrong, without impairing the right of such person or persons to demand and collect the balance of said claim or cause of action from the other joint tort-feasors or wrongdoers against whom such person or persons has such claim or cause of action, and not so released.

Laws 1915, p. 268; § 4223, R.S.Mo.1919. Prior to the 1915 amendment, "a settlement with one joint tort-feasor ... constituted a settlement for all joint tort-feasors." *Farrell v. Kingshighway Bridge Co.*, 117 S.W.2d 693, 697 (Mo.App.1938). The statute remained unchanged until 1983, when our legislature added the second portion.

Clearly, the first portion is directed to postjudgment matters. However, the second portion does not distinguish between pre- and postjudgment settlements. This portion of the amended statute derives from § 4 of the Uniform Contribution Among Tortfeasors Act (UCATA), 12 U.L.A. 57, 98 (1975). Like § 537.060, the UCATA is silent as to whether it applies to settlements made after judgment has been entered establishing the liability of the defendants, as here.

■ SLU argues that § 537.060 does not apply here, and that its payment of its proportionate share of the damages, one-half, constitutes a satisfaction of judgment. However, the statute and the cases and commentary to which SLU refers us do not support its position. We must presume that the legislature intended what the law states directly. *Metro Auto Auction v. Director of Revenue*, 707 S.W.2d 397, 404[9] (Mo. banc 1986). Our legislature easily could have inserted words that would restrict application of § 537.060 to only those settlements reached before entry of judgment, as the California legislature did: "Where a release, dismissal with or without prejudice, or a covenant not to sue or not to enforce judgment is given in good faith *before verdict or judgment* to one or more of a number of tortfeasors claimed to be liable for the same tort ..." Cal.Civ.

Proc.Code § 877 (1995) (emphasis added). The absence of similar qualifying language in § 537.060 suggests that the legislature intended that the statute apply to an "agreement by release, covenant not to sue or not to enforce a judgment," regardless of the time of the agreement.

Moreover, the presence of the phrase "covenant ... not to enforce a judgment" suggests that the legislature intended § 537.060 to apply to postjudgment settlements, because litigants may enter into such covenants anytime after commencement of a lawsuit, including after judgment is rendered. *See generally First Bank of Grantsburg v. Harris Banking Co.*, 666 F.2d 1150 (8th Cir. 1981). Such a construction of the statute also furthers the purpose of encouraging settlements; a contrary construction would provide little if any incentive to continue settlement negotiations during the pendency of an appeal.

SLU relies heavily on a Massachusetts case that deals with a statute very similar to § 537.060. In *Bishop v. Klein*, 380 Mass. 285, 402 N.E.2d 1365 (1980), the Supreme Judicial Court of Massachusetts, interpreting Mass.Gen.L. ch. 231B, § 4 ("§ 4"), a portion of UCATA § 4 that differs only semantically from the second portion of § 537.060, held that the statute does not apply to limit contribution where the parties settled after judgment:

[T]o apply the contribution bar of § 4(b) to a settlement reached after judgment has been entered contradicts the general purpose of the statute as recognized in *Hayon v. Coca Cola Bottling Co. of New England*, 375 Mass. 644, 378 N.E.2d 442[, 445[2] (1978) (stating that the purpose is to remedy "the unfairness of allowing a disproportionate share of the plaintiff's recovery to be borne by one of several joint tortfeasors" and to accomplish "a more equitable distribution of that burden among those liable in tort for the same injury.") ]. Where, as here, a wrongdoer has settled for less than his pro rata share, such a construction would, in essence, constitute a reversion to the common law view that an injured party may apportion the loss among joint tortfeasors as he sees fit....

We can resolve this apparent conflict of policies by limiting the preclusive effects of § 4(b) to prejudgment settlements.

*Bishop*, 402 N.E.2d at 1372[11]. To bolster its position further, SLU points out that one of the drafters of the amended § 537.060, citing *Bishop*, concluded that the statute "protects the settling tortfeasor from a contribution action, but only if it is given prior to the entry of judgment." David A. Fischer, *The New Settlement Statute: Its History and Effect*, 40 J.Mo.B. 13, 14 (1984).

However, neither SLU nor Professor Fischer, in his article, recognizes that Massachusetts enacted other sections of the UCATA and, in concluding that § 4(b) applied only to prejudgment settlements, the *Bishop* court relied largely on a section of the UCATA that has not been enacted in Missouri: "The judgment of the court in determining the liability of the several defendants to the claimant for an injury shall be binding as among such defendants in determining their right to contribution." Mass.Gen.L. ch. 231B, § 3(f), UCATA § 3(f) ("§ 3(f)"), *quoted in Bishop*, 402 N.E.2d at 1371. After quoting § 3(f), the *Bishop* court continued: "It seems to us that this language clearly establishes that entry of judgment against two or more joint tortfeasors fixes a defendant's right to contribution for the amount paid in excess of his equitable share and extinguishes any right to settle and thereby discharge liability for contribution." 402 N.E.2d at 1371[8].

In the language of the settlement agreement, plaintiff and Cardinal Glennon expressly recognized the issue of the applicability of § 537.060:

It is agreed by the parties hereto, plaintiff Daniel Callahan and defendant Cardinal Glennon Hospital, that this settlement does not limit or prevent plaintiff Daniel Callahan's right to proceed to collect the entire balance of the prior judgment entered herein from defendant [SLU] provided that [§ 537.060] applies to this Stipulation, Release, Settlement and Agreement Not to Further Enforce Judgment and defendant Cardinal Glennon Hospital is fully and completely released from any claims of contribution pursuant to section 537.060. In the event that the highest appellate court from which relief is sought and obtained, or the trial court if no appeal is sought, determines that [§ 537.060] is inapplicable to this [agreement] thereby making defendant Cardinal Glennon Hospital subject to claims for contribution, then plaintiff Daniel Callahan agrees and acknowledges that the $4,000,000.00 received from defendant Cardinal Glennon Hospital is a compromise settlement of defendant Cardinal Glennon Hospital's equitable share owing under the May 7, 1991 judgment, which was subsequently reduced by the August 8, 1991 setoff. According to the judgment and setoff, defendant Cardinal Glennon Hospital's equitable share is $7,855,000.00. Therefore, plaintiff Daniel Callahan understands and agrees that the remaining amount left unsatisfied by this [agreement] is the sum of $7,855,000.00 (excluding interest), which is the sole responsibility and liability of defendant [SLU].

It is also agreed and understood by both parties hereto that by plaintiff Daniel Callahan's agreement to indemnify defendant Cardinal Glennon Hospital for any claim of contribution by defendant [SLU], plaintiff Daniel Callahan does not acknowledge or in any way agree or acquiesce that defendant [SLU] has a valid claim for contribution against defendant Cardinal Glennon Hospital. To the contrary, it is the opinion of the parties hereto that [§ 537.060] precludes any action for contribution by defendant [SLU] against defendant Cardinal Glennon Hospital following this good faith settlement.

Because we conclude that § 537.060 applies to the settlement agreement here, pursuant to the express terms of the agreement, plaintiff is free to pursue the remainder of his judgment from SLU.

■ The question then becomes whether SLU is responsible for the full judgment less the $4,000,000.00 for which Cardinal Glennon settled or, as SLU argues, it is responsible only for its equitable or proportionate share, $7,855,000.00. In support of its position, SLU relies on the statement of our Supreme Court in *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983): "Insofar as possible this

and future cases shall apply the doctrine of pure comparative fault in accordance with the Uniform Comparative Fault Act [UCFA]...." *Id.* at 15[3]. Specifically, the *Gustafson* Court intended to adopt the approach of UCFA § 6 ("§ 6"), which provides:

A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation....

12 U.L.A. 42, 57 (Supp.1994).

*Gustafson* was the culmination of a line of cases from our Supreme Court that established a trend toward pure comparative fault. The Court proposed the use of "relative fault" to determine liability between joint tortfeasors after judgment in *Missouri Pac. R.R. Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466 (Mo. banc 1978). However, the Court limited the application of *Whitehead & Kales* in a series of opinions from 1979 to 1982, despite the fact that "Missouri lawyers have pursued with vigor the direction pointed by *Whitehead & Kales* [.]" *Gustafson*, 661 S.W.2d at 14; *see also id.* (listing opinions that limited application of *Whitehead & Kales* ).

Both *Whitehead & Kales* and *Gustafson* contain excellent and insightful expositions of the development of the comparative fault doctrine in Missouri. We note, however, a statement by the *Gustafson* Court wherein it qualified its adoption of § 6:

We believe the approach taken in § 6 has the advantage of treating both plaintiffs and defendants equitably while also being logically consistent with the principle of proportionate fault.... [W]e respectfully invite the General Assembly to reconsider the language in § 537.060, as amended [in 1983]. In the meantime, however, insofar as § 6 is inconsistent with § 537.060, we will defer to the terms of the statute.

661 S.W.2d at 16 n. 10.

Section 6 would reduce SLU's share of the judgment by the amount of Cardinal Glen-

non's equitable share thereof, namely, one-half, or $7,855,000.00. Section 537.060, on the other hand, states that a release reduces the claim only "by the stipulated amount of the agreement," which here is $4,000,000.00. Because § 6 and § 537.060 conflict on this point, as the *Gustafson* Court recognized, *see* 661 S.W.2d at 15 n. 10, *see also Teeter v. Missouri Highway and Transportation Commission*, 891 S.W.2d 817, 821[8] (Mo. banc 1995), and because the legislature has yet to take up the invitation of *Gustafson* to "reconsider the language in § 537.060," we must follow the Supreme Court's directions and defer to the terms of § 537.060. Therefore, the statute operates to reduce plaintiff's claim by $4,000,000.00, the stipulated amount of the agreement, and SLU is responsible for the remainder of the judgment.

Judgment affirmed.

AHRENS, P.J., and KAROHL, J., concur.