**CARDINAL GLENNON HOSPITAL,**
Plaintiff/Appellant/ Cross–
Respondent,

and

**St. Louis University, and Paul G. Fetick, M.D., Plaintiffs,**

v.

**AMERICAN CYANAMID COMPANY, and Hesselberg Drug Company, Defendants/Respondents/Cross–Appellants.**

Nos. ED 74795, ED 74796, ED 74809.

Missouri Court of Appeals,
Eastern District,
Division One.

June 1, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 6, 1999.

Application for Transfer Denied
Aug. 24, 1999.

Bruce R. Bartlett & Steven G. Schumaier, Clayton, MO, for Cardinal Glennon, appellant.

Rex Carr, St. Louis, MO, for SLU, appellant.

P. Terence Crebs, St. Louis, MO, for Dr. Fetick, appellant.

Kenneth R. Heineman & Dale R. Joerling, St. Louis, MO, for Hesselberg & Co–Counsel for American Cyanamid, respondent.

David P. Donovan, Roger W. Yoergers, Alex C. Lakatos & Nicholas P. Coleman, Washington, D.C., for American Cyanamid, respondents.

CRANDALL, J.

Plaintiff, Cardinal Glennon Hospital[1], appeals from the trial court's grant of summary judgment in favor of defendants, American Cyanamid Company and Hesselberg Drug Company, in an action for contribution and indemnification and from the dismissal of its action for fraud against American Cyanamid Company which it brought after settling a medical malpractice action. We affirm.

The record reveals that the underlying medical malpractice action was brought in 1987 by Danny Callahan, a permanent triplegic, against St. Louis University (hereinafter SLU), Cardinal Glennon Hospital (hereinafter Cardinal Glennon), Dr. Paul G. Fetick, and the present defendant, American Cyanamid Company (hereinafter American Cyanamid) for causing Danny's paralysis from polio. *See Callahan v.. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 856–857 (Mo. banc 1993) (hereinafter *Callahan I*) (setting forth the factual details of the malpractice action). American Cyanamid was the manufacturer of Orimune, the live polio vaccine given to Danny. In July 1990, Dr. Fetick, Danny's pediatrician, settled with him for $290,000.00. Sometime thereafter, American Cyanamid was dismissed. At the time of trial only SLU and Cardinal Glennon remained as defendants. In May 1991, the jury returned a verdict in the amount of $16,000,000.00 against SLU and Cardinal Glennon. The trial court entered judgment in the amount of $15,710,000.00, after reducing the verdict by the amount of the settlement between Danny and Dr. Fetick; and held SLU and Cardinal Glennon jointly and severally liable. Both defendants appealed. Cardinal Glennon settled Danny's claim for $4,000,000.00 prior to filing its appellate brief. SLU continued with the appeal and the Missouri Supreme Court affirmed the judgment in *Callahan I*, 863 S.W.2d at 873. This court later held that SLU was required to pay the remaining $11,710,000.00 plus interest to Danny. *Callahan v. Cardinal Glennon Children's Hosp.*, 901 S.W.2d 270 (Mo.App. E.D.1995) (hereinafter *Callahan II*). In February 1994, American Cyanamid entered into a settlement with Danny for $300,000.00.[2]

In May 1996, Cardinal Glennon brought an action against American Cyanamid and Hesselberg Drug Company (Hesselberg) for contribution and indemnification and for fraud. The claims against American

**1.** The trial court consolidated Cardinal Glennon Hospital's action with virtually identical actions brought by St. Louis University and by Dr. Fetick. Although the trial court's dismissal of the fraud claims and the grant of summary judgment on the contribution claims dispensed with St. Louis University's and Dr. Fetick's claims as well, we address the trial court's rulings only as they relate to Cardinal Glennon, because St. Louis University and Dr. Fetick are not parties to this appeal.

**2.** The terms of the settlement were that Danny and his parents each received $150,000.00. The payment to Danny was returnable in the event American Cyanamid was found liable for contribution to another party. The payment to Danny's parents was unconditional.

Cyanamid were based in part on its failure to comply with federal statutes and regulations regarding the licensing, testing, and manufacture of live oral polio vaccine. American Cyanamid moved to dismiss the fraud claim on the ground that it was a disguised contribution claim that did not state a cause of action for fraud. The trial court dismissed the fraud claim on that basis. American Cyanamid then moved for dismissal, or in the alternative for summary judgment, on the ground that Cardinal Glennon did not obtain a release of Danny's claims against it, a prerequisite to seeking contribution. Hesselberg joined in that motion. The trial court granted summary judgment in favor of American Cyanamid and Hesselberg.

■ In its first point, Cardinal Glennon contends the trial court erred in granting summary judgment in favor of American Cyanamid and Hesselberg because Cardinal Glennon's settlement with Danny did not bar the present contribution action.

When considering an appeal from a summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially *de novo. Id.* The propriety of a summary judgment is purely an issue of law. *Id.* Because the trial court's judgment is founded on the record submitted and the law, the appellate court need not defer to the trial court's grant of summary judgment. *Id.* Summary judgment is designed to permit the trial court to enter judgment where the moving party has demonstrated on the basis of facts, as to which there is no genuine dispute, a right to judgment as a matter of law. *Id.; see also* Rule 74.04.

Section 537.060, RSMo (1994) addresses contribution between tortfeasors and provides in pertinent part:

Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one or two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. . . .

Cardinal Glennon claims the Missouri legislature's failure to include language in the statute specifically prohibiting a settling tortfeasor from seeking contribution from a non-settling tortfeasor evinces its intent to not bar such actions.

In *Gustafson v. Benda,* 661 S.W.2d 11, 15 (Mo. banc 1983), the Missouri Supreme Court stated that the Uniform Comparative Fault Act (hereinafter UCFA) should be applied in Missouri "insofar as possible." Section 4(b) of the UCFA provides that "[c]ontribution is available to a person who enters into a settlement with a claimant only . . . if the liability of the person against whom contribution is sought has been extinguished. . . ." Other Missouri cases have consistently followed the rule requiring that one seeking contribution must discharge the liability of the person from whom contribution is sought. *See, e.g., State Farm Mut. Auto. Ins. Co. v. MFA Mut. Ins. Co.,* 671 S.W.2d 276 (Mo. banc 1984) (an uninsured motorist carrier suing another carrier for contribution must first show that it has obtained a release which discharges the other carrier from liability); *Greenstreet v. Rupert,* 795 S.W.2d 539 (Mo.App.1990) (a settling joint tortfeasor permitted to seek contribution where he had obtained from the underlying plaintiff a general release "of any and all claims" and paid the full value of the claims).

Cardinal Glennon argues that section 537.060 clearly pertains to contribution claims only *against* settling tortfeasors, not *by* settling tortfeasors. In *Hampton v. Safeway Sanitation Services, Inc.,* 725 S.W.2d 605, 607 (Mo.App.1987), this court stated that section 537.060 was "based upon the philosophy and policy found in, and derived from the express language embodied in, the Uniform Contribution Among Tortfeasors Act . . . ." (hereinafter UCATA). In *Hampton,* this court specifically referred to "key provisions" of the UCATA "essentially adopted by the legislature," including section 1(d) of the UCATA which provided: "[A] tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury . . . is not extinguished by the settlement which is in excess of what was reasonable." *Id.* at 608. The legislature's silence on the issue of contribution claims by settling tortfeasors cannot be construed as altering the clear principles of law enunciated in the case law, the UCATA, and the UCFA.

Here, Cardinal Glennon did not obtain a discharge of the liability either of American Cyanamid or of Hesselberg when it settled with Danny. As a result, it is now barred from seeking contribution from them. The trial court did not err in granting summary judgment in favor of American Cyanamid and Hesselberg on the basis that Cardinal Glennon's claim was barred as a matter of law.

Cardinal Glennon urges this court to engraft exceptions onto the settlor barred rule on the following grounds: contribution among tortfeasors is based upon the principle of fairness; public policy encourages settlements; satisfaction of the underlying judgment immunizes the non-settling party from any further liability to the underlying plaintiff; and finally, a non-settling tortfeasor should not benefit from its intentional conduct, such as releasing non-compliant polio vaccine into the stream of commerce. Yet, Cardinal Glen-

non has not furnished any authority either from Missouri or any other jurisdiction supporting these exceptions. We decline to adopt the suggested exceptions to the settlor barred rule. Furthermore, to permit contribution on the basis of any of the proposed exceptions would ultimately emasculate the rule. Cardinal Glennon's first point is denied.

■ In its second point, Cardinal Glennon claims the trial court erred in dismissing its claim for fraud against American Cyanamid. Cardinal Glennon's fraud claim was premised on the detriment to its defense as a result of the allegedly false deposition testimony of an American Cyanamid representative regarding whether the polio vaccine complied with federal regulations. Cardinal Glennon sought damages in the amount of $4,000,000.00, the amount it paid to settle with Danny, as well as attorneys' fees incurred to defend against Danny's action. The trial court dismissed the fraud claim on the ground that it was a disguised claim for contribution. Cardinal Glennon argues that its fraud claim is an independent action based on a set of facts separate and distinct from the facts in the underlying medical malpractice action.

In *South Carolina Nat'l Bank v. Stone,* 749 F.Supp. 1419, 1433 (D.S.C.1990), the non-settling defendants sought to assert cross-claims against certain of the settling defendants for breach of contract, negligence, and fraud. The non-settling defendants contended that these claims were in the nature of independent rights of action rather than contribution. *Id.* The settling defendants persuasively argued that "a rose by any other name is still a rose" and that regardless of the title given to the claims the non-settling defendants sought to assert, their alleged damages arose only if the non-settling defendants were found liable to the plaintiff. *Id.* Thus, the purported causes of action were nothing more than claims for contribution or indemnification with a slight change of wording. *Id.*

It appears that without recovery by Danny against Cardinal Glennon in the underlying medical malpractice action and

without Cardinal Glennon's settling with Danny for $4,000,000.00, its so-called "independent claim" against American Cyanamid would not exist. Cardinal Glennon will not be permitted to circumvent the strictures of section 537.060 by bringing a claim for contribution or indemnification under the guise of a fraud claim. The trial court did not err in dismissing Cardinal Glennon's fraud claim against American Cyanamid. Cardinal Glennon's second point denied.

American Cyanamid and Hesselberg both filed cross-appeals, challenging the trial court's failure to grant their respective motions to dismiss Cardinal Glennon's action on various grounds asserted therein. In view of our holding under point one, these claims on appeal are rendered moot.

The judgment of the trial court is affirmed.

JAMES A. PUDLOWSKI, P.J., and CLIFFORD H. AHRENS, J., concur.

