Michael FETICK, Executor of the Estate of Paul G. Fetick, M.D., Appellant/Cross–Respondent,

v.

AMERICAN CYANAMID COMPANY, and Hesselberg Drug Company, Respondents/Cross–Appellants.

No. SC 82337.

Supreme Court of Missouri, En Banc.

March 6, 2001.

**416**

Mark R. Dunn, St. Louis, Marc S. Moller, Henry Gluckstern, New York City, and Stanley P. Kops, Philadelphia, PA, for Appellant.

Kenneth R. Heineman, Dale R. Joerling, St. Louis, Roger W. Yoerges, Nicholas P. Coleman, David P. Donovan and Lara A. Englund, Washington, DC, for Respondent.

BENTON, Judge.

Dr. Paul G. Fetick, M.D., sued American Cyanamid Company and Hesselberg Drug Company for contribution. The circuit court granted summary judgment to both defendants, while dismissing a separate fraud count against American Cyanamid. After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const. art. V, sec. 10.* Affirmed.

### I.

American Cyanamid manufactured Orimune, an oral poliomyelitis vaccine, which Hesselberg Drug distributed. On November 4, 1978, Dr. Fetick administered Orimune to three-month-old Danny Callahan. Danny appeared in good health until December 2, when diagnosed with an unrelated perirectal abscess. Following negligent treatment by Cardinal Glennon Hospital and St. Louis University (SLU), Danny contracted polio, which permanently paralyzed his legs and left arm. See *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 856–58 (Mo. banc 1993).

Danny originally sued Dr. Fetick, the Hospital, SLU, and American Cyanamid. At trial, only SLU and the Hospital remained as defendants. Before trial, Danny settled with Dr. Fetick for $290,000. Later, but also before trial, Danny dismissed American Cyanamid without prejudice. *St. Louis University v. Hesselberg Drug Company*, 35 S.W.3d 451 (Mo.App. 2000). The jury found SLU and the Hospital jointly and severally liable, assessing $16 million in damages. After offsetting the $290,000 pretrial settlement, the judgment was reduced to $15,710,000. See *section 537.060 RSMo 2000; Callahan v. Cardinal Glennon Children's Hosp.*, 901 S.W.2d 270, 271 (Mo.App.1995).

In this case, Dr. Fetick sued American Cyanamid and Hesselberg Drug, seeking contribution for the $290,000 settlement, and alleging fraud by Cyanamid. The trial court entered summary judgment for both defendants. Dr. Fetick appealed.

### II.

By settling, Fetick extinguished Danny's claim only against himself, while insulating himself from the contribution claims of other defendants. *Lowe v. Norfolk and Western Ry. Co.*, 753 S.W.2d 891, 894 (Mo. banc 1988). But in procuring this protection, Fetick also triggered the "settlor-barred" doctrine, which precludes him from pursuing his own contribution claims. *Cardinal Glennon Hospital v. American Cyanamid Company*, 997 S.W.2d 42, 45 (Mo.App.1999). A settling defendant is barred from seeking contribution against another defendant unless the settling defendant has discharged the liability of that defendant. *Id.* at 44.

Fetick argues that once a judgment is fully satisfied, the settlor-barred doctrine should not apply. Because any claim by Danny against American Cyanamid and Hesselberg is effectively ended, Fetick now asserts a right to contribution against Cyanamid and Hesselberg.

### A. Post-satisfaction "settlement"

In support of a "satisfaction of judgment" exception, Fetick cites a decision of the United States Court of Appeals for the Eighth Circuit, *American Cyanamid Company v. St. Louis University*, 205 F.3d 1344 (8th Cir.2000). In that federal case, American Cyanamid sought declaratory judgment to bar SLU from seeking contribution from it. *Id.* American Cyanamid—after the state trial but before the federal case—settled with Danny for $300,000.

The District Court allowed SLU to seek contribution from American Cyanamid. *American Cyanamid Company v. St. Louis University*, Case No. 4:94CV2483-SNL (E.D. Mo, April 15, 1999). The

Eighth Circuit affirmed, without opinion. 205 F.3d at 1344. The federal courts held that Danny's claim was fully extinguished by the $16 million satisfaction of judgment he received *before* receiving the $300,000 from American Cyanamid. The federal courts held that the $300,000 was not a true settlement: "at the time American Cyanamid entered its 'settlement' ... Callahan no longer had a claim to settle." *Id.* Cyanamid, therefore, could not claim protection against contribution-seeking tortfeasors. *Id.*

The federal courts did not discuss the settlor-barred doctrine, let alone establish any exception to it. Moreover, the federal case is irrelevant to the settlor-barred doctrine, because neither Cyanamid nor SLU were "settlors" within the meaning of the settlor-barred doctrine.

### B. Pending-appeal settlement

After the original malpractice trial, the Hospital separately settled with Danny for $4 million, and thus did not appeal the $15,710,000 verdict. The appeal did continue; the Hospital did not discharge the liability of SLU, American Cyanamid or Hesselberg.

In another state case, the Hospital sued Hesselberg for contribution, and American Cyanamid for contribution, fraud and indemnification. *Cardinal Glennon*, 997 S.W.2d at 43–44. The Court of Appeals held that by the settlor-barred doctrine, the Hospital could not seek contribution from American Cyanamid or Hesselberg because the Hospital did not discharge their liability. *Cardinal Glennon*, 997 S.W.2d at 45. The Court of Appeals expressly rejected exceptions to the settlor-barred doctrine. *Id.*

This state case controls here. By settling with Danny, Fetick discharged only his liability to Danny, and protected himself from contribution claims of other defendants. Equally, he is barred from seeking contribution from American Cyanamid or Hesselberg in the present case.

### C. Pre-trial settlement

Fetick argues, in the alternative, that the settlor-barred doctrine violates equal protection in this case, alleging that a pretrial settlor (Fetick) is treated differently from a pending-appeal settlor (Hospital). To the contrary, the Hospital was denied contribution, just as Fetick now cannot seek contribution. See *Cardinal Glennon*, 997 S.W.2d at 43–44.

### III.

Moving for summary judgment, American Cyanamid claimed that Fetick was not entitled to recover for fraud as a matter of law because he did not suffer damages. Summary judgment is appropriate "where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law." *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

American Cyanamid, as a defending party moving for summary judgment, may "establish a right to judgment by showing ... facts that negate *any one* of the claimant's elements...." *Id.* at 381. One of the elements of fraud is "the hearer's consequent and proximately caused injury." *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988). Failing to establish damages defeats a fraud claim. *Id.*

In his petition, Fetick first alleged as damages the settlement amount and expenses (including attorney fees) from the original Callahan suit. A related case holds that such an allegation is meritless: a fraud claim may not be brought if it is a disguised claim for contribution. *Cardinal Glennon*, 997 S.W.2d at 45–46.

The only other damage Fetick pleads is his "loss of reputation and standing in the medical community." In accord with Rule 74.04(c), American Cyanamid set forth the material facts warranting sum-

mary judgment. Cyanamid quoted Fetick's deposition that he: (1) did not know how, or whether, his reputation was damaged, (2) could not name a specific doctor that held him in lesser esteem due to the Callahan lawsuit, and (3) was unaware of any doctor who stopped referring patients to him.

█ Once American Cyanamid made this prima facie showing, Fetick had a specific burden: " 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his *response*, by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts showing that there is a genuine issue for trial.*' " *ITT Commercial Fin. Corp.*, 854 S.W.2d at 381.

In response, Fetick asserted (without pointing to any evidence) that the "entire Cardinal Glennon medical community" knew of Danny's injuries. In support, Fetick offered his own deposition, the affidavit of Susan and John Hoffman, and tax returns showing a decreased income. Neither of the Hoffmans—Fetick's daughter and son-in-law—is a member of the medical community. Their affidavit testifies to Fetick's emotional state, not his reputation or standing in the medical community.

█ No recovery is allowed for mental suffering in fraud cases, absent physical injury, unless the tortfeasor acted willfully or maliciously. *Walsh v. Ingersoll–Rand Co.*, 656 F.2d 367 (8th Cir.1981); *Medlock v. Farmers State Bank of Texas County*, 696 S.W.2d 873, 879 (Mo.App. 1985). Dr. Fetick testified that he suffered no physical injury resulting from stress:

Q: Did you personally suffer any physical illness?

A: No, I didn't.

While Fetick did not specifically plead emotional distress in his petition, he did contend, in his punitives claim, that Cyanamid acted willfully and maliciously.

█ The parties dispute whether to be recoverable as damages for willful· fraud, emotional distress must be "medically diagnosable and significant" within the meaning of *Bass v. Nooney*, 646 S.W.2d 765, 772–773 (Mo. banc 1983). This Court now holds that emotional distress, to be compensable as damages for willful fraud, must be medically diagnosable and significant. Fetick testified that he suffered no medically significant emotional damages.

Q: Did you ever seek treatment

A: Other than the fact that there was some distress. I'm sure I had stress.

Q: Did you ever seek treatment for this emotional distress?

A: No, I didn't.

Q: Did you lose any hours from work?

A: No. I continued to work until I retired.

Fetick's emotional distress was not medically diagnosable or significant, and thus not compensable as damages for willful fraud.

Next, Fetick does not relate the tax returns or any loss of income to the Callahan incident. Fetick states in his deposition:

Q: Do you claim that you lost income in 1978 because of Danny Callahan's illness?

. . . .

A: I don't recall losing much of my practice with Danny Callahan. Danny Callahan stopped coming to me after he had this. That's all I can say. I didn't keep track of all that. There are probably a lot of doctors that are statistical men, that that's what they want to find out. I did not do that.

Q: Do you claim you lost income in 1979 because of Danny Callahan's illness?

A: I could have, and maybe I didn't. I don't know, because that wasn't an interest to me.

Q: Do you claim that you lost income in 1980 because of Danny Callahan's illness?

A: What do you want me to say for these things? That wasn't an important factor in my life of worrying about whether I'm losing income at all. I was making a livelihood.

. . . .

Q: Do you claim you lost any income at all because of—

A: I don't know what income I lost, ma'am, period.

Q: But do you claim that you lost any? I mean, putting aside what the number is—

A: I'm not saying one way or the other. I can't answer your question.

. . . .

Q: Okay, Dr. Fetick, do you claim that you lost any income because of Danny Callahan's lawsuit against you?

A: No. I don't know whether I lost some practice because of that lawsuit or not. I don't know. I did not keep track of that.

. . . .

Q: Do you claim that you lost any patients because of Danny Callahan's lawsuit against you?

A: I could have. I don't know. I didn't take a count to find out. My practice continued.

Q: Can you name any patients you lost because of Danny Callahan's lawsuit?

A: I cannot, to this day, answer that.

As to his general reputation and standing in the community, Fetick testified in his deposition:

Q: Can you tell me how your reputation was injured by Danny Callahan's lawsuit?

A: No, ma'am, I cannot.

Q: Do you think it was injured by—

A: I don't know. It could have been.

. . . .

Q: Did anyone ever say to you anything to suggest that they thought it was your fault that Danny Callahan was paralyzed?

A: No.

Q: Do you know of anyone involved in Danny Callahan's treatment who thinks that you did anything wrong in treating Danny Callahan?

A: No, I don't.

Q: Do you know of any doctor who thinks you did anything wrong in treating Danny Callahan?

A: Not that I'm aware of.

At the hearing on summary judgment, the trial court directly inquired about the damage to Fetick's medical reputation.

**The Court:** "Now, there's a question of referrals, you know, did he lose anything there with respect to hospitals or doctors, did he lose any certifications, professional memberships, license suspension or revocation, flat out lost a job, kicked out of a partnership with other doctors. All of those things are indicia of reputation problems.

Do you have anything like that?

**[Fetick's attorney]:** No, sir.

**The Court:** Do you have a doctor who would get on the stand and testify that as a matter of Fetick's reputation within the medical community his reputation for competency is now one of the incompetency as a result of the Callahans?

**[Fetick's attorney]:** I do not know a physician that would get on the stand and do that. . . ."

Finally, Fetick alleges it was due to the fraud that he lost the Callahans themselves as patients in April 1984. To the contrary, his own evidence demonstrates that he lost the Callahans due to the filing of the lawsuit. The Hoffmans' affidavit submitted with the "Reply to American Cyanamid Company's Statement of Facts as to Which it is Claimed There is No Genuine Issue," says:

[The Callahans] were going to seek counsel in regard to what happened to Danny, and were, therefore, leaving his practice.... [Dr. Fetick] could not fathom why Danny Callahan had become paralyzed, and that the Callahans were saying it was all his fault.

The only specific fact Fetick offered is that he lost Danny as a patient, not due to Cyanamid's fraud, but because the Callahans sought counsel, and blamed the paralysis on him. See *Heberer*, 744 S.W.2d at 443–44.

Fetick did not set forth specific facts showing that there is a genuine issue for trial as required by Rule 74.04. The trial court properly granted summary judgment to American Cyanamid on the fraud count.[1]

The judgment is affirmed.

WHITE and HOLSTEIN, JJ., and GARRISON and PREWITT, Sp. JJ., concur.

PRICE, C.J., LIMBAUGH and WOLFF, JJ., not participating.

---

1. Fetick also claimed the costs of suing Cyanamid as damages. However, Fetick must win the underlying suit as a threshold to recover these costs. *Harris v. Union Elec. Co.*, 766 S.W.2d 80, 89 (Mo.1989).