Alethea BOSTIC, by next Friend, Susan BOSTIC, Plaintiff–Respondent,

v.

BILL DILLARD SHOWS, INC., Defendant–Appellant,

v.

LMC, INC. and Industrial Molding Corporation, Third Party Defendants–Respondents.

No. WD 43605.

Missouri Court of Appeals, Western District.

Feb. 25, 1992.

Motion for and/or Transfer to Supreme Court Denied March 31, 1992.

Application to Transfer Denied June 2, 1992.

Gary A. Schaffersman, Kansas City, for defendant-appellant.

Walter R. Simpson, Kansas City, for plaintiff-respondent.

Roger Geary, Kansas City, for third party defendants-respondents.

Thomas O. Baker, Kansas City, for W.F. Larson, Inc.

Before LOWENSTEIN, C.J., and SHANGLER and TURNAGE, JJ.

LOWENSTEIN, Chief Judge.

The then thirteen year old plaintiff, by her next friend, her mother, sued the appellant Bill Dillard Shows, Inc. in negligence for injuries she suffered on a ride run by Dillard as part of a traveling amusement park. Bostic lost a front tooth and part of another when the "Super Loop" ride came to a sudden stop and her mouth hit a metal rod which extended from the side of the seat upward through a padded lap bar and on up to the ceiling. These bars are eight to ten inches from the passenger's face.

The Super Loop itself is an upright sixty-two foot ride with railroad-like tracks on the outer side of an inertia inner ring. There are solid plastic wheels on the ring and there are wheels on the cars which are connected to the ring. The ride is activated by an operator who starts rocking the cars at the bottom of the circle until enough momentum is built up to cause the cars to make complete revolutions in the circle. The passenger cars run in a continuous circle attached to the inner circumference of the Loop. The passengers sit on a bench type of seat with a padded bar over their laps.

Bostic was injured when approximately ten of the five inch diameter plastic wheels holding the inertia ring broke, the ring came into contact with the steel circle and her car came to a sudden stop. Her special medical damages were just under $1000 for temporary crowns and then permanent implants to replace her teeth. Bostic missed several days of school, had discomfort and worried about her smile. Periodic dental work will need to be done on the implants. A jury brought in an award of $20,000 actual damages and $200,000 for punitive damages.

The negligence submission was for Dillard's failure "to pad a metal bar positioned near plaintiff's head, or [failure] to replace the wheels ... before they became damaged." The punitive submission was predicated on Dillard's conduct showing a "complete indifference to or conscious disregard for the safety of others." (MAI 10.02).

If the circle the ride passed on was a clock face, the car came to a stop in the 9:00 position. Several witnesses, who were office workers near the site, watching the daylong set up and testing of the ride saw the cars stop in the 9:00, 12:00 and 3:00 positions for extended periods of time with men working on the loop.

Dillard's evidence was that the wheels had a limited lifetime and required constant visual inspection and replacement. The rolling wheels made a different and perceptible sound when they began to chip or crack. Dillard claimed no problems in the setup or in the first day's operation of the ride. Wheels did break off, but there were literally hundreds on the ride and the Super Loop had never malfunctioned with passengers on board. Dillard alleged the wheels from the ring that were broken had just been replaced, brand-new, the day of the accident. Dillard's safety coordinator felt the upright bars should have been padded but knew of no instance where the ride had come to a sudden stop. There was no expert testimony as to the cause of this accident. There was no mechanism whereby the operator could have brought the ride to a sudden stop. The ride had been set up, all wheels inspected and some replaced

the very day of the accident. The ride ran from about 5:00 p.m. until the accident, which occurred between 9:00 and 10:00 p.m.

The third party defendants, the manufacturers of the ride and of the wheels, settled with Bostic for a total of $11,000. On appeal Dillard contests the dismissal from the suit of respondent Industrial Molding Corporation (wheels) who settled with Bostic for $10,000, and of LMC, Inc. (ride) who settled for $1,000.

Dillard's points on appeal include: insufficient evidence for a submission on punitive damages as well as the underlying issue of negligence; instructional errors relating to both submissions; trial court error in applying § 537.060, RSMo.1986 to the Bostic settlements with the other defendants; the inordinate amount of punitive damages; and, plain error in plaintiff's closing argument. Due to the disposition of the appeal not all the issues will be reached.

## PUNITIVE DAMAGES SUBMISSION

■ Dillard argues its motion for a directed verdict at the close of the evidence should have been sustained because Dillard had no knowledge of defects in the wheels that broke, or of safety problems with an unpadded bar.

A defendant's motion for a directed verdict at the close of all the evidence is only sustainable when the plaintiff has failed to make a submissible case. *Norris v. Jones*, 687 S.W.2d 280, 281 (Mo. App.1985). In review of the trial court's ruling on a defendant's motion for directed verdict, the Court of Appeals views the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff, disregarding all evidence and inferences to the contrary. *Id.* The test to determine when a directed verdict is appropriate is whether reasonable men could differ on the correct disposition of the case. *Love v. Deere & Company*, 720 S.W.2d 786, 789 (Mo.App.1986).

*Angotti v. Celotex Corporation*, 812 S.W.2d 742, 746 (Mo.App.1991).

Keeping true to the standard of review and the evidence to be considered, there was no evidence of Dillard's failure to inspect or replace the wheels. There had never been an incident like this one where the wheels shattered and part of the ride mechanism hit the main structure causing the cars to come to an immediate stop. Even if not believed, this ride had been in use since 1979 and after extensive usage never malfunctioned to the extent the passenger cars came to a sudden stop—wheels had chipped or broken in mid-ride, but they were replaced without incident. The witness testimony of seeing the Super Loop ride come to a sudden stop during the day of the accident does not give rise to an inference favorable to the punitive submission, nor for that matter the negligence submission discussed *infra*.

In sum, the plaintiff's favorable evidence for a punitive submission was that certain wheels became damaged, the ride came to a stop, and she was injured by contact with the exposed metal bars. Her evidence was that Dillard knew the unpadded upright bars could be a safety threat, but did nothing. The issue then becomes whether this evidence and the reasonable inferences from the evidence was sufficient to support a submission for conduct showing a complete indifference to or conscious disregard for the safety of others. *Menaugh v. Resler Optometry, Inc.*, 799 S.W.2d 71, 73 (Mo. banc 1990); MAI 10.02, "This is so if the defendant knew or had reason to know there was a high degree of probability that the action would result in injury," *Stojkovic v. Weller*, 802 S.W.2d 152, 155 (Mo. banc 1991), quoting from *Hoover's Dairy, Inc. v. Mid–America Dairymen, Inc.*, 700 S.W.2d 426, 436 (Mo. banc 1985). *Hoover's Dairy*, and later cases such as *May v. AOG Holding Corp.*, 810 S.W.2d 655, 660–61 (Mo.App.1991), make positive statements that our Missouri law on punitive damages requires knowledge or scienter (or the defendant should have known) of the probability and resulting injury. In fact, "actual knowledge of the dangerous condition is generally required." *Hoover's Dairy* at 437. "Scienter in some degree is essential

to the award of punitive damages in a negligence case." *May* at 661.

■ A punitive award is not appropriate in every negligence case—facts in addition to the negligence submission must be established for such a recovery. *Menaugh v. Resler Optometry, Inc.,* 799 S.W.2d at 74. "The uniform tenor of the recent cases is that punitive damages are to be the exception rather than the rule," but despite differences in phraseology, the submission and recovery is "all depend on willful wrongdoing, or recklessness which is the legal equivalent of willfulness." *Menaugh,* at 75.

Dillard directs the court to examine *Sledge v. Town & Country Tire Centers,* 654 S.W.2d 176 (Mo.App.1983). The plaintiff sought damages for injuries based on the defendant Town and Country's failure to properly lubricate the rear axle bearings of the car in which the plaintiff was riding. The improper lubrication caused excessive heating which caused the axle to break causing the car to leave the highway. *Id.* at 178. The plaintiff recovered actual and punitive damages. The punitive award was overturned on the conclusion of insufficiency of the evidence, the court writing at page 182:

> But the only evidence in the record is that the mechanic believed from his experience and from his visual inspection of the axle and bearings that the method being utilized was the correct one. His actual or constructive knowledge that injury could occur if he was negligent was an element of defendant's duty. It does not supply the knowing violation of that duty necessary to support punitive damages. The mechanic utilized a method he believed to be correct; he was negligent in so doing but he did not knowingly act improperly nor was he indifferent to or in conscious disregard of plaintiff's safety. (footnote omitted)

This court concludes that there was insufficient evidence to support the submission for a punitive award. That portion of the judgment for $200,000 is reversed.

## NEGLIGENCE SUBMISSION

The court next takes up the submissibility of the underlying verdict director for negligence. Instruction 6, the negligence verdict director is now set out:

> Your verdict must be for plaintiff Alethea Bostic if you believe:
> First, either: defendant failed to pad a metal bar positioned near plaintiff's head or defendant failed to replace the wheels on the Super Loop ride before they became damaged, and
> Second, in any one or more of the respects submitted in paragraph First, was thereby negligent, and
> Third, as a direct result of such negligence plaintiff sustained damage.
> The term "negligent" or "negligence" as used in this instruction means the failure to use that degree of care that a very careful and prudent person would use under the same or similar circumstances. M.A.I. 17.02, 11.02.

In *Hoover's Dairy, supra,* at page 431 the court holds:

> A claimant in a negligence action must establish a (1) legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to the claimant's person or property. "Where the existence of a duty is established, however, it is not one to protect against every possible injury which might occur." *Irby v. St. Louis County Cab Co.,* 560 S.W.2d 392, 394 (Mo.App.1977). Rather, it is generally measured by "whether or not a reasonably prudent person would have anticipated danger and provided against it." *Scheibel v. Hillis,* 531 S.W.2d 285, 288 (Mo. banc 1976). *See also Smith v. Archbishop of St. Louis,* 632 S.W.2d 516, 521 (Mo.App. 1982).
> The initial question is whether knowledge is an essential part of every negligence action. It is generally stated that foreseeability that some injury might result from the act complained of normally

serves as the paramount factor in determining the existence of a duty. *See e.g., Lowrey v. Horvath*, 689 S.W.2d 625, 627 (Mo. banc 1985); *Joyce v. Nash*, 630 S.W.2d 219, 222–23 (Mo.App.1982). When deciding if some injury was reasonably foreseeable, whether expressly or implicitly, courts examine what the actor knew or should have known. *See generally Robertson v. Le Master*, 301 S.E.2d 563 (W.Va.1983) (for a good discussion of the concept of "duty"). *See also Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983).

■ This court rules that there was insufficient evidence or reasonable inferences to support the alternate action in the first paragraph—Dillard's failure to replace the wheels before they became damaged. Even ignoring, as the court must in this review, the defendant's evidence of inspection and repair of the wheels and likewise ignoring the lengthy observations of the office-worker witnesses about the set up of the ride, there is no evidence to support this purported act of negligence.

It is indeed a close case as to whether failure to pad the bar, in and of itself could support all the elements of an action for negligence, but this court rules no error in submitting this allegation of negligence to the jury.

The question then becomes what is the effect of having one of the two disjunctive submissions not having been adequately supported. "When a verdict-directing instruction submits in the disjunctive two or more assignments of negligence, the instruction is erroneous unless the evidence is sufficient to support all of the assignments," *Stevens v. Kliethermes*, 811 S.W.2d 447, 449 (Mo.App.1991); *Bunch v. McMillian*, 568 S.W.2d 809, 811 (Mo.App. 1978). In *Ensor v. Hodgeson*, 615 S.W.2d 519 (Mo.App.1981), the submission was in several disjunctive acts as to the plaintiff motorcyclist's negligence, (lookout, stopped, slowed or stalled). The court found no evidence of slowing and stated that a disjunctive submission is erroneous unless there is sufficient evidence to support all assignments, *Bunch v. McMillian*,

and such submission, "was prejudicial error requiring reversal". *Id.* at 523–24. The court here rules the matter remanded for trial on the underlying action for negligence, but without opportunity to relitigate the assignment as to wheel replacement.

## DISMISSAL OF THIRD PARTY DEFENDANTS

This final matter should be addressed. Dillard complains the trial court erroneously dismissed third party actions against LMC, Inc. and Industrial Molding Corporation ruling the plaintiff's settlement with these two defendants discharged Dillard from liability under § 537.060, RSMo.1986.

■ Dillard contends that § 537.060 is inapplicable to its third party petition because the petition sounded in strict products liability and § 537.060 is applicable and discharges liability only when the third party defendants are joint tort feasors culpably negligent. It reasons that since culpable negligence is not an element of a strict liability claim the statute is inapplicable. The statute reads:

**Contribution between tort-feasors—release of one or more, effect.** Defendants in a judgment founded on an action for redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one or two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. The term **"noncontractual indemnity"** as used in this section refers

to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reasons of contract or by reason of vicarious liability.

The last sentence of § 537.060 serves to explain and *expand* the term "noncontractual indemnity," *not to limit* the application of the statute to claims involving culpable negligence as Dillard argues. As stated in *Lowe v. Norfolk and Western Railway Co.*, 753 S.W.2d 891, 894 (Mo. banc 1988), the policy of the law is to encourage settlements. The interpretation Dillard suggests would not enhance this policy.

In *Lowe*, railroad employees sued the railroad for injuries sustained during the clean-up of a toxic chemical spill. The railroad filed third party claims against the manufacturers of the tank car, the chemical and the coupler yoke. The trial court dismissed the third party claims because the manufacturers had entered into a settlement with the injured plaintiffs. Appellant railroad contended, among other things, that the third party claims should not have been dismissed because different considerations should be given in strict liability claims. The Supreme Court held that in determining whether or not a settlement discharges a defendant in a claim for contribution or indemnity, there should be no distinction between products liability claims and negligence claims.

 Dillard also contends that the trial court erred in refusing to allow it to amend its third party petition to add two claims for breach of warranty. Once again, the argument says that since culpable negligence is irrelevant in an action for breach of warranty, § 537.060 does not apply. While courts should be liberal in permitting amendments to pleadings, whether or not an amendment should be permitted is generally within the discretion of the trial court. *Pender v. Foeste*, 329 S.W.2d 656, 659 (Mo.1960). The Dillard motion was filed on January 23, 1990, approximately six weeks prior to trial and after substantial discovery had occurred. The

trial judge found that the motion was filed to disrupt the settlements. The court did not abuse its discretion in denying the motion. Furthermore, even if the trial court had allowed the amendment, the result would have been the same because, as stated above, § 537.060 would have mandated dismissal of these claims even though culpable negligence is not an element of the claims.

 Finally, Dillard argues that § 537.060 is inapplicable to discharge third party claims because there existed a legal relationship between Bill Dillard Shows, Inc. and third-party defendants. Dillard admits it had no written contract with third party defendants but asserts its claims for breach of warranty of merchantability and breach of warranty of fitness for a particular purpose are based on contract principles and, under the Uniform Commercial Code, a legal relationship is created by Bill Dillard Shows, Inc. buying and using the plastic wheels manufactured and sold by Industrial Molding, Inc. and LMC, Inc. As stated earlier, the policy of the law is to encourage settlements. The last sentence of the statute serves to expand the term and excludes only indemnity which comes about by reason of contract or by reason of vicarious liability. Any warranties created by the U.C.C. are implied and arise by operation of law (*See Horner v. David Distributing Co.*, 599 S.W.2d 100, 103 (Mo.App. 1980)), not by contract. The manufacture and sale of the plastic wheels and the purchase and use of the wheels did not create a "legal relationship" as contemplated by the statute. The point is denied.

The judgment is reversed and remanded for trial on negligence excluding an assignment as to the replacement of the wheels, and excluding any submission for punitive damages.