AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, Appellant,

v.

ENSZ & JESTER, P.C., et al., Respondents.

No. WD 73401.

Missouri Court of Appeals, Western District.

Oct. 25, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 22, 2011.

Application for Transfer Denied March 6, 2012.

---

David Ladwig, Arthur A. Benson II, and Jamie Kathryn Lansford, Kansas City, MO, for Appellant.

James C. Morrow and Julie A. Bush, Kansas City, MO, for Respondents.

Before Division One: VICTOR C. HOWARD, Presiding Judge, and ALOK AHUJA and KAREN KING MITCHELL, Judges.

KAREN KING MITCHELL, Judge.

This case involves a professional negligence claim, a breach of fiduciary duty claim, and a breach of contract claim. The issue is whether and to what extent section 537.060[1] bars recovery on the claims. That section discharges a settling tortfeasor from liability to a second tortfeasor when the liability is based in contribution or indemnity for the same injury to which the settlement agreement applied, unless indemnity is expressly or impliedly provided for by contract or vicarious liability applies. Here, the plaintiff does not allege that it entered into a contract that expressly or impliedly provided for indemnity, and it does not allege that it was held vicariously liable for the defendants' conduct. Therefore, *to the extent* the plaintiff is seeking indemnification from the defendants, its claims are barred. However, part of the relief plaintiff seeks cannot properly be deemed "indemnification," and therefore section 537.060 does not apply to it. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

### Facts and Procedural Background[2]

Appellant American National Property and Casualty Company ("American National") is an insurance company. American National engaged Respondent Ensz & Jester, P.C., a law firm, to represent its insured, Justin Kurtz, in an automobile accident case. Respondents Jim Ensz and Randall Thompson were attorneys at Ensz & Jester who were involved in the representation of Kurtz.[3]

After an excess judgment against Kurtz in the underlying automobile accident case, he sued Ensz & Jester for malpractice and American National for bad faith. American National and Ensz & Jester independently settled Kurtz's claims against them. American National then sued Ensz & Jester for professional negligence, breach of contract, and breach of fiduciary duty, alleging, as damages, the amounts it paid in the bad-faith matter, including its attorneys' fees, and the amounts it paid Ensz & Jester in the automobile accident case.

The facts of the underlying litigation—in which Ensz & Jester represented Kurtz, American National's insured—were as follows. Wilma Rapp suffered injuries in an automobile accident involving Kurtz. At

---

1. Statutory citations are to RSMo 2000, as updated by the 2010 cumulative supplement.

2. On appeal from the grant of a motion for summary judgment, we review the facts in the light most favorable to the non-movant. *Bugg v. Rutter*, 330 S.W.3d 148, 151 n. 1 (Mo.App. W.D.2010).

3. We will refer to the Respondents collectively as "Ensz & Jester."

the time of the accident, Kurtz was driving to work for his employer ("Employer") in a truck owned by Kurtz's mother. Initially, Rapp named only Kurtz in the personal injury case. However, she amended her petition to name Employer and Kurtz's parents[4] on vicarious liability and negligent entrustment theories, respectively.

When American National retained Ensz & Jester, American National provided the law firm with certain litigation guidelines, which, American National claims, Ensz & Jester failed to follow. For example, American National alleges that Ensz & Jester failed to report information that would have affected American National's decision whether to settle. At first, Rapp reported her medical damages to be less than $5,000. Ensz & Jester advised American National that, with less than $5,000 in medical special damages, the reasonable settlement value was $28,000. Through the course of the litigation, Rapp increased the amount of the medical damages she was alleging to $80,000, but Ensz & Jester failed to timely report the increases to American National.

American National also alleges that Ensz & Jester failed to report a conflict of interest. American National requested that Ensz & Jester provide American National legal opinions regarding (1) whether American National's insurance policy covered Employer; and (2) whether it would be a conflict of interest for Ensz & Jester to represent both Kurtz and Employer. Viewed in the light most favorable to American National, the facts of the underlying case established that, when the accident occurred, Kurtz was acting within the scope of his employment with Employer. Nevertheless, Ensz & Jester advised American National that Kurtz was *not* acting in the course and scope of employment and that there was *no* conflict of interest

inherent to Ensz & Jester representing both Kurtz and Employer.

Employer moved for summary judgment, arguing that Kurtz was not acting in the course and scope of his employment, but the circuit court denied the motion. Thereafter, Ensz & Jester continued to represent both Kurtz and Employer and continued to argue that the accident occurred when Kurtz was not in the course and scope of his employment. If Employer had been found liable for Kurtz's negligence, an additional $500,000 in coverage would have been available. That amount would have satisfied the ultimate judgment, and there would have been no excess claim against the Kurtzes.

American National also alleges that Rapp offered to settle with Kurtz and his parents in exchange for payment to Rapp of the applicable policy limits, with an understanding that Kurtz would cooperate in testifying at trial regarding the claims against Employer but that Ensz & Jester never relayed the offer to American National.

Rapp's case proceeded to trial and the jury returned a verdict against Kurtz and his parents in excess of his insurance policy's limits. Kurtz and his parents then sued Ensz & Jester and American National for malpractice and bad faith, respectively. American National and Ensz & Jester independently settled the Kurtzes' claims.

American National then filed this lawsuit against Ensz & Jester. American National alleges that, had Ensz & Jester followed the litigation guidelines, it could have settled Rapp's case against Kurtz and thereby avoided Kurtz's bad-faith lawsuit against it. American National also alleges that Ensz & Jester breached professional,

---

4. At times, we will refer to Kurtz and his parents collectively as "Kurtz."

fiduciary, and contractual duties owed to it by failing to disclose or to properly evaluate the conflict of interest that existed by virtue of Ensz & Jester representing both Kurtz and Employer. American National also alleges that Ensz & Jester's conflict of interest in representing both Kurtz and Employer caused it to avoid a litigation strategy that would be beneficial to Kurtz but not Employer. American National seeks the amount it paid to settle the bad-faith claims with the Kurtzes, the attorneys' fees it expended in defending that claim, and disgorgement of the attorneys' fees it paid to Ensz & Jester in the automobile accident case.

Ensz & Jester moved for summary judgment, arguing that section 537.060 barred American National's claims in that American National was seeking to be indemnified for the amounts it expended in settling Kurtz's claims. Since Ensz & Jester had entered into a good-faith settlement with Kurtz, section 537.060, it argued, barred as against it any claim by another tortfeasor for indemnification for the same injury. In response to the motion for summary judgment, American National admitted that no contract of indemnity existed between the parties and that Ensz & Jester never agreed to indemnify it, but it claimed that a contract did exist between the parties, arising from litigation guidelines provided to Ensz & Jester by American National. American National does not allege that it was held vicariously liable for Ensz & Jester's conduct. The circuit court agreed with Ensz & Jester that section 537.060 barred American National's claims, and it accordingly entered summary judgment in favor of Ensz & Jester. American National appeals.

## Standard of Review

"We review the circuit court's grant of summary judgment *de novo.* *De novo* review means that we will consider the propriety of summary judgment under the same standard that applied to the circuit court when it considered the issue." *Hughes v. Davidson–Hues,* 330 S.W.3d 114, 117 (Mo.App. W.D.2010) (citation omitted).

The circuit court must grant a motion for summary judgment if the motion, the response, and any other materials show that (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6).

"Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993). The court makes all reasonable factual inferences in favor of the non-moving party. *Id.*

The moving party is entitled to summary judgment if the undisputed facts show that it is entitled to judgment as a matter of law. *Id.* at 380. When, as here, the defendant has moved for summary judgment based on an affirmative defense, it must show "that there is no genuine dispute as to the existence of each of the facts necessary to support [its] properly-pleaded affirmative defense." *Id.* at 381 (emphasis omitted).

If the motion establishes that judgment as a matter of law is appropriate for part, but not all, of the plaintiff's claims,

> [t]he court shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so speci-

fied shall be deemed established, and the trial shall be conducted accordingly. Rule 74.04(d).

## Legal Analysis

American National argues that the circuit court erred in granting summary judgment in that section 537.060 does not bar its claims against Ensz & Jester because (1) the parties had a "legal relationship"; or (2) its claims are not for "indemnity." We disagree with the first point but agree in part with the second.

Section 537.060 provides:

When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. *The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor.* The term "noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

(Emphasis added.)

The circuit court held that Ensz & Jester's settlement with Kurtz triggered section 537.060 with respect to American Na-

tional's claims and therefore discharged Ensz & Jester from any liability for those claims.

## I. Whether American National's claims are for something other than "indemnity" so as to render section 537.060 inapplicable[5]

American National argues that its claims are not for "indemnity," and therefore section 537.060 does not apply. We agree in part.

"Indemnity" is the shifting of responsibility from one party to another. *Beeler v. Martin,* 306 S.W.3d 108, 110 (Mo. App. W.D.2010); *SSM Health Care St. Louis v. Radiologic Imaging Consultants,* 128 S.W.3d 534, 539 (Mo.App. E.D.2003). It is

a right that inures to the person who has discharged a duty that is owed by him, but which, as between himself and another, should have been discharged by the other, so that if the other does not reimburse the person, the other is unjustly enriched to [the] extent that his liability has been discharged.

*SSM Health Care,* 128 S.W.3d at 539. If the plaintiff seeks reimbursement from the defendant for amounts the plaintiff paid in discharging a liability to a third party, the claim is for "indemnity," irrespective of whether the plaintiff calls it something else. *See Cardinal Glennon Hosp. v. Am. Cyanamid Co.,* 997 S.W.2d 42, 45 (Mo.App. E.D.1999).

Here, American National seeks to recover the amounts it paid in settling Kurtz's bad-faith claim against it and its attorneys' fees incurred in that litigation. However, it calls its claims "attorney negligence/malpractice," "breach of fiduciary duty," and "breach of contract." But how-

---

5. We address Point II of American National's appeal first for the sake of logical progression: if it has asserted no claim for indemni-

ty, there is no point in analyzing whether an exception to section 537.060's discharge of liability applies.

ever American National denominates its claims, part of its claims seeks reimbursement for the amounts it expended in discharging its liability to Kurtz. Thus, though it has not called its claims "indemnity," it is clear that American National is attempting to shift responsibility for the bad-faith claim to Ensz & Jester; i.e., it is seeking indemnification. American National cannot avoid the application of section 537.060 by disguising its indemnity claim as something else. *See id.*

In *Cardinal Glennon*, a hospital and a manufacturer of a vaccine were sued for medical malpractice. *Id.* at 43. After it had settled the underlying medical malpractice lawsuit, the hospital sued the manufacturer for contribution, indemnity, and fraud, arguing in the latter cause of action that the manufacturer's conduct in the underlying medical malpractice lawsuit (giving an allegedly false deposition) caused it to suffer damages in that action. *Id.* at 43–45. The hospital sought as damages the amount it paid to the injured party and the attorneys' fees it incurred in defending the lawsuit. *Id.* at 45. The Eastern District of this court held that section 537.060 barred the contribution claim,[6] and then it turned to whether the fraud claim was barred in that it was a disguised claim for contribution or indemnity. *Id.* It held:

It appears that without recovery by [the injured party] against [the hospital] in the underlying medical malpractice action and without [the hospital's] settling with [the injured party] for $ 4,000,-000.00, its so-called "independent claim" against [the manufacturer] *would not exist.* [The hospital] will not be permitted to circumvent the strictures of section 537.060 by bringing a claim for contribution or indemnification under the guise of a fraud claim.

*Id.* at 45–46 (emphasis added).

■ Likewise, in this case, American National's claims for the amount it paid in settling the bad-faith claim and the amount it paid in attorneys' fees associated with the bad-faith claim *would not exist* but for Kurtz's claim against American National. American National's position is that Ensz & Jester should ultimately bear the responsibility for the damages associated with Kurtz's bad-faith claim. That is the essence of indemnity, irrespective of what American National calls it.[7]

■ The issue is different, however, with respect to American National's claimed entitlement to a refund of the fees it paid to Ensz & Jester in the automobile accident case. Giving all reasonable inferences to American National's petition, it

6. It is not clear from the opinion whether its holding with respect to the contribution claim also disposed of the indemnity claim.

7. American National argues that Kurtz's claims against it and Ensz & Jester were not for the "same injury" because Kurtz alleged punitive damages, and punitive damages always implicate the discrete conduct of an individual defendant. But it is the *injury*, not the *damages* that are available for the injury, that must be the same in order to implicate section 537.060. *See Stevenson v. Aquila Foreign Qualifications Corp.*, 326 S.W.3d 920, 926 (Mo.App. W.D.2010) (construing same injury to mean "an indivisible injury caused by a single transaction of facts"). If a person is injured by more than one tortfeasor, the extent of recovery may differ between the two tortfeasors. For example, one tortfeasor may have acted willfully and another negligently (in which case punitive damages may be available with respect to one but not the other), or one tortfeasor may be subject to statutory damages while the other is not. However, that the measure of damages may differ between the tortfeasors does not change the fact that the plaintiff was injured but once. Since the statute contemplates the "same injury," not the "same damages," we will not limit its applicability (and thereby discourage settlements) by confining it to the latter.

alleges that, due to Ensz & Jester's failure to communicate settlement offers, conflicts of interest, and other material facts relevant to the Rapp lawsuit, American National is entitled to a refund of the fees it paid Ensz & Jester. We express no opinion on the merits of that allegation. The only question before us is whether the allegation is properly characterized as a claim of "indemnity" so as to invoke section 537.060's discharge of liability.

■ Again, a plaintiff seeks indemnity when it seeks to shift to the defendant the responsibility for damages the plaintiff incurred by virtue of its liability to a third party. *SSM Health Care*, 128 S.W.3d at 539. In seeking a refund of the fees it paid Ensz & Jester, American National is not attempting to shift responsibility for the damages it incurred by virtue of being liable to Kurtz. Unlike its damages associated with Kurtz's bad-faith claim, American National's claim for attorneys' fees incurred in the automobile accident case could conceivably exist even if Kurtz's bad-faith claim did not. *Cf. Cardinal Glennon*, 997 S.W.2d at 45–46. That is, if a law firm violated contractual duties or other duties it owed to an insurer, the insurer *could conceivably*[8] be entitled to a refund of fees

even if the insured never brought a bad-faith action.[9]

Thus, we hold that American National's claims for reimbursement of the amount it paid to Kurtz and the amount it expended in litigating Kurtz's bad-faith lawsuit are claims for indemnity that may be subject to section 537.060. However, American National's claim to a refund of the attorneys' fees it paid to Ensz & Jester in the underlying automobile accident case is not a claim for indemnity, and therefore section 537.060 does not bar American National from asserting it. Point denied in part, granted in part.

## II. Whether a "legal relationship" between American National and Ensz & Jester renders section 537.060 inapplicable

American National argues that, even if some or all of its claims are for indemnity, section 537.060 does not apply because it had a "legal relationship" with Ensz & Jester in that an attorney-client relationship existed and/or a contractual relationship existed between the parties and therefore Ensz & Jester's duty to indemnify American National is not "noncontractual indemnity,"[10] which is subject to discharge under the statute. We disagree.

8. Again, we express no opinion regarding whether American National's alleged agreement with Ensz & Jester contained such a term or whether Ensz & Jester had some other duty to refund fees in this case. The issue before us is a very narrow one: whether section 537.060 bars American National from seeking such a refund.

9. Ensz & Jester argues that it entered into no contract with American National and that it owed American National no duty in that it was hired to represent Kurtz and that any duty would therefore have been owed to him alone. However, these issues cannot be disposed of pursuant to the summary judgment motion before us. Though Ensz & Jester claims that no contract existed, American National disputes that point, claiming that the

parties had an implicit or explicit agreement that Ensz & Jester would follow its litigation guidelines and reporting requirements. Moreover, a lawyer can owe duties both to the insurer and the insured, *In re Allstate Ins. Co.*, 722 S.W.2d 947, 952 (Mo. banc 1987); and whether Ensz & Jester owed a duty to American National and/or whether such a duty, if owed, included communicating settlement offers, conflicts, and other material information, is not an issue that was raised in the summary judgment motion. Thus, the existence and scope of Ensz & Jester's duty to American National are not issues that are properly before us.

10. We recognize that "not noncontractual indemnity" is a confusing phrase. But American National's argument is not that it has a

In analyzing the discharge provision of section 537.060, it is helpful to consider the classes of indemnity that have been recognized in case law and other writings. In addition to express contractual indemnity, there are two other general classes of indemnity—(1) implied contractual indemnity, also known as implied-in-fact indemnity; and (2) equitable indemnity, also known as implied-in-law indemnity. *Wells Dairy, Inc. v. Am. Indus. Refrigeration, Inc.*, 762 N.W.2d 463, 469–71 (Iowa 2009); Nicholas P. Alexander, *Developments in Indemnity Law: Express, Implied Contractual, Tort–Based & Statutory*, 79 Mass. L.Rev. 50, 51 (1994); 41 Am.Jur.2d *Indemnity* § 20 (2005). Implied-in-fact contractual indemnity stems from the existence of a binding contract between two parties that necessarily implied the right of indemnification. 41 Am.Jur.2d *Indemnity* § 20 (2005). The party asserting such indemnity must show that the parties to the contract "*intended* the indemnitor to be responsible for the loss." *Developments in Indemnity Law*, 79 Mass. L.Rev. at 53 (emphasis added). Thus, a claim of implied-in-fact indemnity asserts a contractual right to indemnity, even though no express contract for indemnity exists. *Wells Dairy*, 762 N.W.2d at 470 ("It has been widely accepted for decades that indemnity may, in some instances, arise from a contractual relationship even if the parties did not expressly include an indemnity clause in the contract."); 41 Am.Jur.2d Indemnity § 20 (2005).

In contrast, when equitable (implied-in-law) indemnity is involved, the intention of the parties is irrelevant. "Instead, the law imposes indemnity due to the relationship of the parties … regardless of intention." *Wells Dairy*, 762 N.W.2d at 471. "[T]he question is whether there is some duty between the indemnitor and the indemnitee sufficient to impose indemnity on the indemnitor as a matter of law," regardless of their intentions. *Id.* Generally, to give rise to equitable indemnity, a relationship between the parties must be found. *Developments in Indemnity Law*, 79 Mass. L.Rev. at 56. A party asserting equitable indemnity, or implied-in-law indemnity, is therefore not asserting that a contractual right to indemnity exists, *id.* ("Equitable indemnity arises from *noncontractual* obligations."); rather, such a party is asserting that, given the special nature of the case's circumstances, equity demands that one party indemnify the other.

Here, American National is asserting a claim to equitable indemnity. It has admitted that it has no contractual right to indemnity. That admission is broad enough to encompass both express contractual indemnity and implied-in-fact indemnity, which, as explained, are both forms of contractual indemnity. Since we decided above that American National *is* seeking indemnity, and since American National has admitted that it is *not* seeking express or implied-in-fact contractual indemnity, the only possible conclusion is that American National is seeking equitable indemnity, which is the only kind of indemnity that remains.[11] Indeed, American National's position is that the special

contractual right to indemnification. Rather, it argues that (1) the statute discharges "noncontractual indemnity"; (2) its right to indemnification is not "noncontractual" as defined by the statute because they had a legal relationship with Ensz & Jester; and (3) therefore Ensz & Jester's settlement does not discharge Ensz & Jester from liability for indemnity to American National.

11. We note that a fourth category of indemnity, statutory indemnity, may exist. But statutory indemnity is not at issue in this case.

nature of the attorney-client relationship creates a duty for the attorney to indemnify the client. Other jurisdictions have recognized that a professional relationship can give rise to equitable indemnity under some circumstances.[12] *See Wells Dairy,* 762 N.W.2d at 471–72. However, such indemnity, if it exists, cannot properly be termed "contractual" indemnity. *Id.* at 472 ("In these cases, indemnification is not based upon a contractual relationship, but rather upon a tort involving a special relationship between the licensed professional and a client."). That a special relationship arises from contract does not make the claimed indemnity "contractual." Rather, to be contractual indemnity, the contract must expressly provide for indemnity or the terms of the contract must necessarily imply that the parties intended for one party to indemnify the other.

▮ The plain meaning of the term "noncontractual indemnity" includes equitable indemnity. Indeed, we have recently explained that noncontractual indemnity may also be referred to as equitable indemnity. *Beeler,* 306 S.W.3d at 111. Since American National has asserted a form of indemnity that is noncontractual in nature, section 537.060 discharges Ensz & Jester, which settled with the injured party in good faith, from any duty to indemnify American National. § 537.060 ("The agreement shall discharge the tort-feasor to whom it is given from all liability for ... noncontractual indemnity to any other tort-feasor.") ("the discharging clause"). Thus, despite American National's attempts to characterize its claims as "not noncontractual," it is clear that it is seeking equitable indemnity, which is a form of noncontractual indemnity.

The last sentence of section 537.060 provides that "[t]he term 'noncontractual indemnity' as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability." That sentence is meant to clarify that the exception to the discharging clause "excludes only indemnity which comes about by reason of contract or by reason of vicarious liability." *Bostic v. Bill Dillard Shows, Inc.,* 828 S.W.2d 922, 928 (Mo.App. W.D.1992); *see also Tiny Totland, Inc. v. Spalding & Evenflo Co.,* 242 F.3d 830, 834 (8th Cir.2001). Here, it is an undisputed fact that neither contractual indemnity nor vicarious liability applies. Since they do not apply, section 537.060 does. *See Bostic,* 828 S.W.2d at 928.

▮ American National argues that such a reading of section 537.060 renders the phrase "having no legal relationship" meaningless. If possible, we will avoid a construction that renders statutory language meaningless. *In re Estate of Hough,* 457 S.W.2d 687, 692 (Mo.1970). However, our construction of section 537.060 does not render the last sentence meaningless. Without the last sentence, "noncontractual indemnity" could be read to exclude from the statute's discharging provision *only* indemnity based on an express contract. The last sentence clarifies that any indemnity *arising* out of a contract (which would include implied-in-fact contractual indemnity) *and* indemnity based on vicarious liability are also excluded from the statute's discharging clause.[13]

---

**12.** Since we decide that section 537.060 bars any claim against Ensz & Jester for indemnity, we need not decide whether the attorney-client relationship would give rise to an equitable indemnity claim under Missouri law.

**13.** We acknowledge that, in *Bostic,* we used confusing language when we stated that the last sentence of section 537.060 *expands* the definition of "noncontractual indemnity." 828 S.W.2d at 928. Indemnity based on vi-

Given these two caveats, if equitable indemnity claims (not based on principles of vicarious liability) are not discharged by section 537.060, then nothing is.

Thus, it is American National's reading of the last sentence, which would exclude from the statute's discharging provision all indemnity claims based on *any* legal relationship (be it based on an express contract, an implied contract, or principles of equity), that would render the statute's language meaningless. That is, in the absence of a duty to indemnify imposed by law, there is no right to indemnification unless explicitly imposed by a contract. *Haynes v. Kleinewefers,* 921 F.2d 453, 456 (2d Cir.1990); *McNally & Nimergood v. Neumann–Kiewit Constructors, Inc.,* 648 N.W.2d 564, 570 (Iowa 2002); 41 Am.Jur.2d *Indemnity* § 2 (2005). Thus, there is no such thing as indemnity between persons who have *no* legal relationship. An indemnitor, by definition, has a legal duty, whether imposed by contract or imposed by law, to bear the responsibility for the indemnitee's liability to a third party. Since we will not adopt a reading of the statute that renders the discharging clause meaningless, we reject American National's reading of "no legal relationship."

American National attempts to distinguish *Bostic* and other cases on the ground that they did not allege a relationship that existed because of *an express* contract, whereas American National does allege that an express contract existed between it and Ensz & Jester and that the contract created the relationship between American National and Ensz & Jester. Under American National's view, an express contract between the parties that does not provide, expressly or impliedly, for indemnity will render section 537.060 inapplicable because the contract creates a legal relationship that, as a matter of equity, should give rise to indemnity. The "legal relationships" at issue in *Bostic* were the implied warranties of merchantability and fitness for a particular purpose. *See* §§ 400.2–314; 400.2–315. In holding that those warranties were not a "legal relationship" for purposes of section 537.060, we stated that noncontractual indemnity "excludes only indemnity which comes about by reason of contract." *Bostic,* 828 S.W.2d at 928. American National has not explained how indemnity "can come about by reason" of an express contract that does not include an express or implied agreement to indemnify. Like the *implied* warranties of merchantability and fitness, an *express* contract that does not mention indemnity does not generally [14] give rise to indemnity "by reason of a contract." *See SW Bell Tel. Co. v. J.A. Tobin Constr. Co.,* 536 S.W.2d 881, 885 (Mo.App.1976) ("[T]he law has wisely required that such broad and comprehensive indemnification agreement be expressed in clear, unequivocal and unambiguous terms."). Thus, the fact that American National may have had a contract with Ensz & Jester does not change the fact that it is not seeking to enforce a right to indemnity that arises from a contract: as explained above, any right to indemnity that American National has springs from equity, not a contract.

In any case, we reject a reading of section 537.060 that would limit it to parties who have never entered into any kind of express contract with one another. If we

carious liability would be "noncontractual indemnity" but for the last sentence, and therefore the last sentence cannot be said to have expanded the scope of "noncontractual indemnity" in that respect.

14. We again note that American National has not alleged that it has an implied-in-fact contractual right to indemnification.

expand the class of persons who can seek indemnity from a tortfeasor after the tortfeasor has settled the injured party's claims, we will discourage settlement of those claims, which is the opposite of section 537.060's intent. *See State ex rel. Curators of the Univ. of Mo. v. Moorhouse,* 181 S.W.3d 621, 624 (Mo.App. W.D. 2006) (holding that the intent of the statute is to encourage tortfeasors to settle with injured parties by providing that the former will not thereafter be held liable for contribution).

Nor can we accept American National's argument that the special nature of an attorney-client relationship renders section 537.060 inapplicable. As noted above, indemnity that arises via the special relationship of the parties cannot properly be termed "contractual indemnity." *Wells Dairy,* 762 N.W.2d at 472. Assuming, for the sake of argument, that, by the nature of their relationship, a client has a right to be indemnified by its attorney when both are liable to a third party for the same injury, the nature of that right is *equitable,* not *contractual,* unless, of course, the parties have expressly or impliedly agreed to it. American National has admitted that Ensz & Jester did not *agree* to indemnify it. Rather than claiming an express or implied-in-fact contractual right to indemnity, American National argues that its contract with Ensz & Jester created a relationship which should give rise to indemnity, which means that any right to indemnity that American National may have is equitable in nature. Since section 537.060 discharges liability for equitable indemnity when the alleged indemnitor settled in good faith with the injured party, Ensz & Jester's liability for indemnity (if any) has been discharged.

Section 537.060 applies to tortfeasors liable for the same injury *unless* (1) one of them has contractually agreed to indemnify the other; or (2) one was held vicariously liable for the other's conduct. *Bostic,* 828 S.W.2d at 928. Since it is undisputed that neither circumstance is present here, American National's arguments fail. Point denied.[15]

## Conclusion

Section 537.060 bars American National's claims for reimbursement of the amounts it paid in discharging its liability to Kurtz because (1) those claims are for indemnity; (2) it is undisputed that the parties have no express or implied-in-fact contract of indemnity; and (3) American National does not allege that it was held vicariously liable for Ensz & Jester's conduct. Section 537.060 does not bar American National's claim to a refund of the amounts it paid to Ensz & Jester in the automobile accident case because that claim is not for indemnity, and the summary judgment motion alleged no other basis for judgment as a matter of law. Accordingly, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

VICTOR C. HOWARD, Presiding Judge, and ALOK AHUJA, Judge, concur.

---

**15.** The parties devoted much of their briefing to whether Ensz & Jester had a contractual and/or an attorney-client relationship with American National. But that is beside the point at issue here. Whatever the parties' relationship was, it is undisputed that it did not include a contract of indemnity and that vicarious liability does not apply. Those undisputed facts are sufficient to settle the question of whether the parties had a "legal relationship" that would render section 537.060 wholly inapplicable to them.